Amos Friedland (AF 1234)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, New York 10504
Tel. (914) 749-8200
Fax. (914) 749-8300
Email: afriedland@bsfllp.com

Richard A. Lafont (RL 3933)
**PLATZER, SWERGOLD, LEVINE, GOLDBERG, KATZ & JASLOW, LLP**
475 Park Avenue South
18th Floor
New York, New York 10016
Tel. (212) 593-3000
Fax. (212) 593-0353
Email: rlafont@platzerlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVERARD FINDLAY CONSULTING, LLC f/k/a EVERARD FINDLAY LLC,<br>            *Plaintiff*,<br><br>           -against-<br><br>REPUBLIC OF SURINAME,<br>            *Defendant*. | Case No.: 1:18-cv-8926<br><br>**COMPLAINT** |

Plaintiff Everard Findlay Consulting, LLC f/k/a Everard Findlay LLC ("EFLLC") brings this action against the Republic of Suriname ("ROS"). Plaintiff alleges upon personal knowledge as to its own acts and observations and otherwise upon information and belief as follows:

## INTRODUCTION

1.    This case arises from ROS's failure to honor its contractual obligations to EFLLC

for the comprehensive, multimedia branding campaign and strategic consultancy services provided by EFLLC and agreed to by ROS with the stated goals of changing international and, especially, changing American perceptions of ROS as a lawless country, controlled by an authoritarian leader that condones the use of ROS as a transshipment point for drug trafficking from South America to Europe, and is too friendly to America's enemies, from Hezbollah to Russia.

2. In particular, ROS, whose economy is overly reliant upon commodities, such as gold, oil and bauxite, and, thus, is unduly sensitive to market price fluctuations, sought to promote itself as a tourism destination for being a uniquely diverse country, where multiple races, religions and ethnicities live in relative peaceful harmony resulting in a vibrant cross-cultural mix of food, music, art, and design.  Additionally, ROS is home to two United Nations Educational, Scientific and Cultural Organization ("UNESCO") World Heritage sites: the Historic Inner City of Paramaribo (ROS's capital city) and the Central Suriname Nature Reserve, which is largely an unspoiled Amazonian rain forest.  Thus, EFLLC was engaged by ROS to brand it as a multi-faceted tourist destination, which would provide a unique cultural experience along with the benefits of ecotourism.

3. EFLLC sought to achieve these goals through an overall consultancy agreement and performing four individual projects, each of which was subject to a written agreement with agreed upon budgets that were signed by the parties, seeking to create "buzz" among academics, design professionals, travel writers and intellectuals about ROS.  Through print journalism (in magazines, such as Vogue, Conde Nast Traveler and Forbes) and social media, EFLLC sought to "introduce" ROS to America, with the goal of changing negative perceptions of ROS and increasing its visibility as a unique tourist destination, with room for investment and growth.

4. These goals were achieved, in part, by EFLLC organizing and orchestrating visits to ROS by several design professionals and trendsetters. These visits were chronicled in print, photos, and/or video and showcased the vibrant diversity and harmony among ROS's ethnic groups, the cross-cultural influences that are unique to ROS, and ROS's efforts at keeping the rain forest as a pristine sanctuary apart from the modern world.

5. EFLLC also hosted conferences in New York where the design professionals and trendsetters could share their experiences of ROS with persons in their fields in order to create additional positive publicity about ROS as not only a tourism destination, but also a cultural happening.

6. EFLLC also coordinated media outreach to ensure positive publicity for ROS regarding the branding strategy.

7. While EFLLC was largely successful in executing its branding strategy, ROS inexplicably stopped all payments for the existing projects. After due demand, EFLLC is owed a balance of $2,236,710.10.

**PARTIES**

8. Plaintiff EFLLC is a limited liability company organized under the laws of New York, with a principal place of business at 94 South 1st Street, New York, New York 11211.

9. Defendant ROS is a Foreign State as defined in 28 U.S.C § 1603.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1330 as ROS is a Foreign State that is not immune from the jurisdiction of the Courts of the United States because this action arises from commercial activity, as defined by 28 U.S.C § 1605(a)(2), carried on by ROS in the United States.

11. Venue is proper in this district pursuant to 28 U.S.C § 1391(f) because a substantial part of the events giving rise to this action occurred in the Southern District of New York.

## FACTUAL ALLEGATIONS

**A.  The Projects**

12. Starting in May 2012, EFLLC began negotiation with Kitty Sweeb, Deputy Foreign Policy Coordinator for the Cabinet of the President of ROS ("Ms. Sweeb") for a brand consulting agreement.

13. These negotiations, including extensive proposed drafts that were modified by Ms. Sweeb, resulted in, on or about October 1, 2012, ROS and EFLLC entering into the Terms of Reference for Branding Consultation, Development and Implementation and the related Agreement for Branding Consultation, Development and Implementation (collectively, the "Branding Consultation Agreement").

14. The Branding Consultation Agreement was signed on behalf of ROS by Mr. Winston G. Lackin, who was at that time Minister of Foreign Affairs ("Minister Lackin"), and by Everard Findlay ("Findlay") on EFLLC's behalf.

15. The stated "Objectives" of the Branding Consultation Agreement were to:

- Create a sustainable, dynamic, specific, recognizable and competitive brand for Suriname that will be used in marketing the country domestically, regionally, and internationally
- Identify short, intermediate, and long term strategies utilizing said brand identity
- Recommend and facilitate projects that will enhance the brand experience and support the promotion of Suriname as an attractive place to invest, live, and visit domestically, regionally, and internationally
- Stimulate greater desire for international visitors to come to Suriname and for citizens of Suriname to tour their own country

- Generate greater awareness of the tourist destinations and packages in Suriname
- Utilize targeted forums to position Suriname as an attractive tourist destination
- Create advertising, communication and branding initiatives
- Promote areas of investments, services, trade and other sectors as determined

16. In order for EFLLC to carry out the Objectives, ROS agreed to pay EFLLC an initiation fee in the amount of $60,000.00, a monthly consultancy fee of $16,040.00 and the budgeted costs and expenses of the various projects that the parties were to agree upon to achieve the "Objectives."

17. ROS officially recognized the engagement of EFLLC by letter dated November 25, 2012 to Findlay and signed by Ms. Sweeb.

18. In conjunction with its formal engagement, EFLLC undertook the task of identifying specific projects that would further the Objectives.

19. Again, Ms. Sweeb had an extensive role in choosing from the thirteen projects proposed by EFLLC to decide upon a core set of Projects that fit the goals of ROS.

20. These negotiations resulted in EFLLC focusing upon four separate projects (collectively, the "Projects"), each of which was reduced to writing with estimated costs, agreed to by ROS and signed by Minister Lackin on or about January 23, 2013.

21. First, the parties agreed to the Web Development & Internal "We Are Suriname" Advertising Campaign (the "Web Development/We Are Suriname Project"). This project involved the development, design and launch of a cohesive web platform for ROS that would be used for: communicating with potential investors and potential tourists (with a focus on ecotourism), showcasing and distributing content developed through the other Projects, showcasing and distributing native content developed by local companies, improving public

(local and international) awareness of positive ROS initiatives enhancing the tourism and business opportunities. The platform was to be optimized to use with social media, including the development of a dedicated software application for use on small, wireless computing devices, such as smartphones or tablets ("Smartphone App").

22. The "We are Suriname" Advertising Campaign was primarily a print media advertising campaign utilizing local talent and resources promoting the sights, sounds and culture of ROS to be rolled out in territorial branding applications domestically and internationally, and for use in print and web publications.

23. Combined, the estimated cost for the Web Development/We Are Suriname Project, as set forth in the written agreement and agreed to by Minister Lackin, was $3,879,211.00.

24. Second, the parties agreed to the Erwin de Vries Art Market Project (the "de Vries Project"), which sought to showcase and chronicle ROS's world-renowned artist, Erwin de Vries, among New York's art world and intelligentsia at various prominent academic panel discussions and exclusive social gatherings. The estimated cost for the de Vries Project, as set forth in the written agreement and agreed to by Minister Lackin, was $217,533.60.

25. Third, the parties agreed to the Designer Collaboration Project (the "Designer Project"), which was to showcase ROS's ethnic diversity by inviting three foreign designers to visit ROS and experience its diverse cultural heritage by collaborating with native artisans from those diverse cultures and create a collection of jewelry inspired by ROS's cultural heritage. The estimated cost for the Designer project, as set forth in the written agreement and agreed to by Minister Lackin, was $873,838.00.

26. Fourth, the parties agreed to the Centrale Bank van Suriname Investment Guide &

DVD (the "Bank Investment Guide Project"), which was an investment guide, in print and with accompanying video presentations, to be distributed by ROS's national bank in order to market investment opportunities in ROS. The estimated cost for the Bank Investment Guide Project, as set forth in the written agreement and agreed to by Minister Lackin, was $338,863.00.

27. Together with the estimated costs for each of Projects set forth above, ROS agreed to pay EFLLC a Creative Direction Fee for EFLLC's coordination and implementation of the Projects in the amount of $959,500.00.

28. Each of the aforementioned fees was set forth in the Brand Development Composite Budget (the "Composite Budget") signed by Minister Lackin on January 23, 2013, together with line items for each of the Projects. The Total 2013 Branding Development budget was: $6,268,945.60.

29. Thus, the budgeted costs for EFLLC's services for the completion of the Projects was agreed to by Minister Lackin by executing each of the Projects' agreements (the "Project Agreements") and by confirming their budgeted costs by executing, contemporaneously, the Project Agreements and the Composite Budget.

30. Moreover, each of the Project Agreements were subject to extensive negotiations and input from Ms. Sweeb, who was well aware of the negotiated costs associated with each of the Projects.

   **B. Project Implementation**

   i. The Web Development/We Are Suriname Project

31. In order to implement the Web Development/We Are Suriname Project, EFLLC engaged the services of professionals to design a ROS tourism website with the accompanying

7

Smartphone App and social media extensions. The associated costs for these aspects of the project were separately broken down and submitted to ROS for payment.

32. The other aspect of this project was to market and advertise, both within ROS and abroad, performances of the song "We Are Suriname" to promote the culture and tourist destinations in ROS. Like the "I Love New York" advertising campaign seen here locally, the "We Are Suriname" advertising campaign was to be filmed and photographed locally in the ROS, with native Surinamese singing and/or dancing to the "We Are Suriname" song. All production tasks were coordinated by EFLLC and the associated costs for these aspects of the project were separately broken down and submitted to ROS for payment.

    ii. <u>The de Vries Project</u>

33. EFLLC implemented the de Vries Project by setting up a trip for Mr. de Vries to appear for a panel discussion of his art and the way the different cultures in ROS inspire him at Soho House in New York City. Soho House is a members' club that caters to elite professionals in creative industries, such as film, fashion, advertising, music, art and media.

34. The panel discussion, which was filmed and distributed on social media, was part of EFLLC's greater branding strategic effort to have the creative community of trendsetters be introduced to ROS in a positive and progressive manner.

35. The costs to complete this project were separately broken down and submitted to ROS for payment.

    iii. <u>The Designer Project</u>.

36. The Designer Project involved Mr. Findlay accompanying three well-known jewelry designers on visits to ROS in order to inspire them to create new designs based upon their experiences with the people, culture and natural beauty of ROS. Each trip was chronicled

8

by a film crew and photographer, with the expectation that each trip would result in a short, documentary-like video that would be disseminated on social media and would result in coverage by print media. Then, the experiences of the designers would be the topic of a panel discussion at an exclusive location frequented by professionals in creative industries.

37. The three design professionals were:

   a. Pamela Love, who met with indigenous Amazon indians in the heart of the rainforest and examined the inner workings of the gold-mining industry, visiting independent gold mines and learning about mercury- and cyanide-free gold mining techniques;

   b. Phoebe and Annette Stephens of Anndra Neen focused on experiencing the Javanese and Hindustani cultures in ROS by meeting with local musicians, artists and artisans; and

   c. Yelena Noah (the sister of NBA star Joakim Noah), who delved deep into Maroon culture, meeting with these descendants of escaped African slaves who, centuries ago, had established strongholds of their own in the jungle – and, through collaboration with the indigenous people there, were able to survive and thrive to the modern day.

38. The Designer Project achieved its goal of generating positive press for ROS through tangible results, including through EFLLC's successful coordination to ensure that Ms. Love's trip was the subject of articles in Vogue and Conde Nast Traveler.

39. The costs to complete the Designer Project were separately broken down and submitted to ROS for payment.

   iv. The Bank Investment Guide Project

40. For the Bank Investment Guide Project, EFLLC designed, produced, and delivered a comprehensive investment package for the purpose of distribution through the Centrale Bank van Suriname ("CBvS") and other governmental entities in physical and digital form. EFLLC produced both a printed investment guide, including a digital edition thereof, and a short film, which could be included with the printed material or viewed digitally on CBvS or

9

the ROS government website highlighting the investment opportunities and positive business climate of ROS.

41.     To produce the DVD, EFLLC had to employ a film crew to shoot on location in ROS and, then, undertake the editing, sound engineering and all other necessary production tasks in order to complete a short film.

42.     The costs to complete the Designer Project were separately broken down and submitted to ROS for payment.

### C. Breach and Demand

43.     It was EFLLC's practice to send periodic account statements and invoices for payment to ROS for pursuant to each the Project Agreements, a practice EFLLC has maintained to date.

44.     Nearly from the outset, beginning in February 2013, payments under the Project Agreements were often delayed, causing scheduling difficulties, extended deadlines, opportunities lost and increased costs.

45.     In July 2013, Findlay wrote to Minister Lackin informing him that ROS was nearly $3 million in arrears on the Composite Budget.

46.     While ROS thereafter made some payments towards the Composite Budget, by May 14, 2014, ROS was still over $2 million in arrears.

47.     These chronic arrearages forced EFLLC to withhold completed work product on, in particular, the Web Development/We Are Suriname Project.

48.     While EFLLC's business is strategic branding, it is highly selective in its engagements and only commits its time, resources and intellectual powers for clients it believes serve the greater good.

49. EFLLC believed in the goals set forth by ROS to market its substantial strengths in natural beauty and a peaceful, diverse populace.

50. Yet, no small business can sustain over $2 million in failed payments without requiring a sincere effort for remittance of past due amounts.

51. In May through July 2014, EFLLC organized several meeting and telephonic conferences for the purpose of securing payment from ROS and completing the Projects; all to no avail.

52. Thus, starting in May 2014, EFLLC's work on the Projects ceased because ROS had stopped making any further payments under the Project Agreements.

53. In a last ditch effort for payment, EFLLC wrote to, among others, Minister Lackin's successor, Niermala Badrising, who is now ROS's Ambassador to the United States ("Ambassador Badrising") in November 2015 to reach an amicable resolution on payment; again, to no avail.

54. Since then EFLLC has heard sporadically from ROS, but there have been no meaningful negotiations to reach any sort of resolution.

55. The amounts due and owing relate primarily to tasks performed under the agreement for the Web Development/We Are Suriname Project (the "Web Development/We Are Suriname Project Agreement"), as set forth in EFLLC's invoices sent for payment to ROS as follows:

|   | **Project Tasks** | **Amount** |
|---|---|---|
| 1 | Internal We Are Suriname Campaign | $905,068.14 |
| 2 | Social Media Extension Development & Implementation | $386,888.85 |

11

| 3 | Web Development | $694,560.56 |
| 4 | Smartphone App Development | $250,192.55 |
|   | **GRAND TOTAL** | **$2,236,710.10** |

56. To date, ROS has failed and refused to pay any of the foregoing amounts due, despite demand.

57. By reason of ROS's breach of the Web Development/We Are Suriname Project Agreement for failure to tender the amounts due thereunder, EFLLC has suffered damages of, at least, $2,236,710.10.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

58. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "57" above as if fully set forth at length herein.

59. Each of the Project Agreements constitute valid, binding, and enforceable contracts supported by consideration.

60. In particular, ROS breached the Web Development/We Are Suriname Project Agreement for failure to tender the amounts due thereunder.

61. EFLLC, at the time ROS breached the Web Development/We Are Suriname Project Agreement, had fulfilled all of its obligations to ROS under all of the Project Agreements, including, but not limited to, the Web Development/We Are Suriname Project Agreement.

62. As a direct and foreseeable result of ROS's contractual breaches, EFLLC has been damaged in an amount to be determined at trial, but, in any event, no less than $2,236,710.10.

## SECOND CAUSE OF ACTION
**(Account Stated)**

63. The Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "62" above as if fully set forth at length herein.

64. EFLLC duly rendered periodic statements of account with regard to the Project Agreements, including, but not limited to, the Web Development/We Are Suriname Project Agreement, which statements were received by ROS in the ordinary course of business.

65. ROS never objected or protested as to any such statements or any item contained therein, as was its duty and obligation if any error existed.

66. By virtue of the above, an account stated has been taken between EFLLC and ROS on the Project Agreements, including, but not limited to, the Web Development/We Are Suriname Project Agreement, whereby ROS has admitted and acknowledged the debts specified therein as accurate and correct in all respects.

67. As a result of the foregoing, EFLLC has a stated account with ROS for an amount to be determined at trial, but, in any event, no less than $2,236,710.10.

**WHEREFORE**, EFLLC, demands judgment on all causes of action, awarding it damages:

A. First Cause of Action against ROS: an amount to be determined at trial, but, in any event, no less than $2,236,710.10, plus interest, costs, expenses and disbursements incurred in this action;

B. Second Cause of Action against ROS: an amount to be determined at trial, but, in any event, no less than $2,236,710.10, plus interest, costs, expenses and disbursements incurred in this action;

C. And for such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 28, 2018

**BOIES SCHILLER FLEXNER LLP**

*/s/ Amos Friedland*
Amos Friedland (AF 1234)
333 Main Street
Armonk, New York 10504
Tel.  (914) 749-8200
Fax.  (914) 749-8300
Email:  afriedland@bsfllp.com

**PLATZER, SWERGOLD, LEVINE, GOLDBERG, KATZ & JASLOW, LLP**

*/s/ Richard A. Lafont*
Richard A. Lafont (RL 3933)
475 Park Avenue South, 18th Floor
New York, New York 10016
Tel.  (212) 593-3000
Fax.  (212) 593-0353
Email:  rlafont@platzerlaw.com

*Attorneys for Plaintiff, Everard Findlay Consulting, LLC f/k/a Everard Findlay, LLC*