USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/30/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Everard Findlay Consulting, LLC,

Plaintiff,

–v–

Republic of Suriname,

Defendant.

18-CV-8926 (AJN)

OPINION
AND ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Everard Findlay Consulting, LLC brings claims for breach of contract and an account stated against Defendant Republic of Suriname.  Now before the Court is Defendant's motion to dismiss on the basis of sovereign immunity, or alternatively on the basis of *forum non conveniens*.  Dkt. No. 27.  For the reasons articulated below, the Court grants Defendant's motion to dismiss, because the Foreign Sovereign Immunities Act bars this action.

I.      BACKGROUND

The following facts are drawn from the Amended Complaint and assumed to be true for purposes of this motion to dismiss.

Plaintiff is a New York-based business that provides "comprehensive, multimedia branding campaign and strategic consultancy services."  Amended Complaint (Amend. Compl.), Dkt. No. 24, ¶ 1.  Defendant, a South American country, engaged Plaintiff to develop "a strategic branding campaign."  *Id.* ¶ 2.  The goal was to change international and especially American "perceptions of ROS as a lawless country, controlled by an authoritarian leader that condones the use of ROS as a transshipment point for drug trafficking from South America to Europe, and is too friendly to America's enemies, from Hezbollah to Russia."  *Id.*  Defendant hoped that the

1

campaign would boost its tourism sector and make it a "cultural happening." *Id.* ¶¶ 3, 7. This was to be accomplished through print media, social media, events in the New York, and visits to Suriname by "trendsetters." *Id.* ¶¶ 4-8.

Plaintiff allegedly worked to accomplish this campaign through a number of individual projects, each of which was subject to a written agreement that was negotiated in part in New York. *Id.* ¶¶ 4, 19. Although Plaintiff admits that it did visit Suriname as part of its work, it alleges that it "conceived of the projects in New York, implemented several key parts of the projects in New York and performed the overwhelming majority of its services on the projects in New York." *Id.* ¶ 5. One of the projects that the parties allegedly agreed to was the "Web Development & Internal 'We Are Suriname' Advertising Campaign." *Id.* ¶ 27. This project "involved the development, design and launch of a cohesive web platform for ROS that would be used for: communicating with potential investors and potential tourists (with a focus on ecotourism), showcasing and distributing content developed through the other Projects, showcasing and distributing native content developed by local companies, improving public (local and international) awareness of positive ROS initiatives enhancing the tourism and business opportunities." *Id.* The "We Are Suriname" component was "primarily a print media advertising campaign utilizing local talent and resources promoting the sights, sounds and culture" of Suriname. *Id.* ¶ 29. The campaign also involved a song titled "We Are Suriname" to promote "culture and tourist destinations." *Id.* ¶ 40.

Though Plaintiff claims that it was performing satisfactorily, it alleges that Defendant was chronically late in making payments to Plaintiff, and eventually ceased payment altogether. *Id.* ¶¶ 59, 66, 68. In turn, Plaintiff stopped working its Suriname projects. *Id.* Plaintiff claims

that under its agreements with Defendant, it is owed over $2 million, most of which pertains to

the Web Development/"We Are Suriname" Project.  *Id.* ¶ 71.

## II.    DISCUSSION

Federal court subject matter jurisdiction over a sovereign state, such as Defendant, is

governed by the Foreign Sovereign Immunities Act ("FSIA").  *See* 28 U.S.C. § 1602 *et seq.*  "In

general, a foreign state or an 'agency or instrumentality of a foreign state,' 28 U.S.C. § 1603(b),

is immune from federal court jurisdiction unless a specific exception to the FSIA applies."

*Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, 600 F.3d 171, 175 (2d Cir. 2010).

Although, "[t]he party seeking to establish jurisdiction bears the burden of producing evidence

establishing that a specific exception to immunity applies," it is "the foreign state" who "bears

the ultimate burden of persuasion on this question."  *City of New York v. Permanent Mission of*

*India to the UN*, 446 F.3d 365, 369 (2d Cir. 2006).

In this case, the only FSIA exception at issue is for commercial activities.  Specifically,

foreign states are not immune from suit "in any case—"

> in which the action is based upon a commercial activity carried on in the United States by
>
> the foreign state; or upon an act performed in the United States in connection with a
>
> commercial activity of the foreign state elsewhere; or upon an act outside the territory of
>
> the United States in connection with a commercial activity of the foreign state elsewhere
>
> and that act causes a direct effect in the United States.
>
> 28 U.S.C. § 1605(a)(2).

The statute further defines "commercial activity" to mean "either a regular course of commercial

conduct or a particular commercial transaction or act. The commercial character of an activity

shall be determined by reference to the nature of the course of conduct or particular transaction

or act, rather than by reference to its purpose." *Id.* § 1603(d).  Accordingly, to determine

whether activity is "commercial" under the FSIA, courts ask "whether the particular actions that

the foreign state performs (whatever the motive behind them) are the *type* of actions by which a

private party engages in trade and traffic or commerce." *Republic of Argentina v. Weltover, Inc.*,

504 U.S. 607, 614 (1992) (quotation omitted) (emphasis in original); *see also id.* at 617

(characterizing "purpose" as "the reason why the foreign state engages in the activity," while

"nature" is "the outward form of the conduct that the foreign state performs or agrees to

perform").  Defendant argues that its contractual relationship with Plaintiff cannot constitute

"commercial activity" under the Second Circuit's decision in *Kato v. Ishihara*, 360 F.3d 106 (2d

Cir. 2004).  The Court agrees.

*Kato* concerned a sexual harassment and retaliation lawsuit that was brought against the

governor and municipal government of Tokyo.  *Id.* at 107.  The plaintiff in that case was an

employee of the Tokyo and claimed that she was harassed during a stint she did at the Tokyo

government's New York office.  *Id.* at 109.  Her duties in New York "included promotional

activities on behalf of Japanese companies, such as manning booths at trade shows to promote

specific products," as well as "creat[ing] marketing reports of interest to Japanese companies."

*Id.*  She argued these activities made her employment in New York "commercial" for purposes

of the FSIA, but the Second Circuit rejected this argument.  *Id.*

As an initial matter, the *Kato* court noted that it did not put much emphasis on FSIA

legislative history that described employment "civil service" personnel as "governmental" and

the employment of "marketing agents" as "commercial."  *Id.* at 111.  It cautioned that these are

"merely examples of the broader distinction made in the text of the FSIA between activities that

are by nature 'commercial' and those that are not," and explained that courts should instead

focus on whether the sovereign state's activities "were typical of a private party engaged in commerce." *Id.*

The court examined plaintiff's work in New York, which, according to the her declaration, consisted of "product promotion for Japanese companies, general business development assistance, participation in trade shows on behalf of the companies to promote those companies' products for sale, and leasing office space to those companies for their business development." *Id.* These activities "were only superficially similar to actions typically undertaken by private parties." *Id.* "Although a private Japanese business might engage in these activities on its own behalf—for example, by sending its representatives to trade shows in the United States to promote its products—such a business would not typically undertake the promotion of other Japanese businesses, or the promotion of Japanese business interests in general." *Id.* at 112. The Second Circuit thus distinguished the "promotion of commerce" from "commerce" itself, explaining that "[t]he promotion abroad of the commerce of domestic firms is a basic—even quintessential—governmental function." *Id*; *see also id.* (describing Tokyo's work in New York as "basic and routine trade promotional activities"). Because Tokyo's New York trade promotion operation did not qualify as a "commercial activity" under FSIA, neither did the plaintiff's employment. *Id.* Jurisdiction was therefore lacking over her claims.

*Kato* governs this case. Here, Defendant has alleged to have done no more than promote commerce, specifically, Suriname's tourism sector. Plaintiff was not hired to advertise for one hotel or tourist attraction in Suriname, but was engaged to promote the country wholesale. *See* Amend. Compl. ¶ 21. This conduct was not "typical of a private party engaged in commerce." *Kato*, 360 F.3d at 111. And to the extent that Defendant's activities were unconnected to specific businesses and aimed at the improvement of Suriname's reputation generally, they were

arguably even less "commercial" than those at issue in *Kato.*  Moreover, Plaintiff's work was not

tangential to these non-commercial activities.  Like in *Kato*, Plaintiff was hired to actually do the

promotional work.  Because the claims in this action are not based on "commercial activity," for

the purposes of the FSIA, the Court lacks subject matter jurisdiction to hear this case.

Plaintiff makes a number of counterarguments, but none are availing.  Plaintiff argues

that its engagement by Defendant was "commercial," because it was acting with a profit motive

by trying to boost tourism and investment.  But this is no more true here than it was in *Kato*, yet

the Second Circuit in that case still found there to be no commercial activity.  Moreover, it is not

even clear how a sovereign's actions to improve sector's economy, as opposed to the

profitability of a state-owned business, count as acting for a "profit motive."  Finally, the text of

the FSIA and dictates of the Supreme Court make clear that the commercial character of a given

activity is to be determined without "reference to its purpose."  28 U.S.C. § 1603(d); *Weltover*,

504 U.S. at 614; *see also NML Capital, LTD. v. Republic of Argentina*, 680 F.3d 254, 259 (2d

Cir. 2012).

Plaintiff also asks this Court to consider only that Defendant allegedly entered into a

contract and then breached it, without considering the content of the contract.  It contends that

actions related to contracts are, in an abstract sense, always commercial.  It cites to authority

from other circuits, which it claims supports this position.  But in this circuit at least, whether a

sovereign has engaged in a commercial activity is not determined at such a high level of

generality.  To look only to the fact of a contract or "only to the fact of employment for purposes

of our 'commercial activity' analysis would allow the exception to swallow the rule of

presumptive sovereign immunity codified in the FSIA."  *Anglo-Iberia Underwriting Mgmt.*, 600

F.3d at 178; *see also Kato*, 360 F.3d at 111 (noting that the activity at issue was "only

superficially similar to actions typically undertaken by private parties"). Rather, as in *Kato*, this

Court must examine the content and scope of the employment or contractual duties—in both

cases, the plaintiffs were engaged to promote commerce, not just regular marketing. Doing so

does not impermissibly take into account the motivation behind the activity. A typical private

party may buy bullets for the army, *see Weltover*, 504 U.S. at 614, or scientific equipment, *see*

*NML Capital, LTD.*, 680 F.3d at 258. But *Kato* teaches that hiring someone to promote

commerce between countries is a "quintessential" government function. *Kato*, 360 F.3d at 112.

Unlike bullets, procuring this product or service is something "a business would not typically

undertake." *Id.*; *see also NML Capital, LTD.*, 680 F.3d at 259 n.10 (distinguishing the promotion

of commerce from the purchase of goods in the marketplace). As the Supreme Court has

acknowledged, it may be "difficult . . . in some cases to separate 'purpose' . . . from 'nature'" in

FSIA commercial activities cases. *Weltover*, 504 U.S. at 617. But the Court need to not explore

the precise boundary between these two concepts in this case. It is enough that the activities here

are practically indistinguishable from those held not to be "commercial" in binding precedent.

Finally, Plaintiff attempts to limit *Kato* to situations involving employment

discrimination. But there was nothing in the reasoning of the case that was particular to

employment discrimination or employment generally. Indeed, the Second Circuit, in a summary

order, recently found *Kato* to be controlling in a suit for breach of an employment contract. *See*

*Omari v. Kreab (USA) Inc.*, 735 F. App'x 30, 32 (2d Cir. 2018). And the fact that the services in

this case were alleged to be obtained through an independent contractor relationship as opposed

to an employment relationship is of no moment. One is no more "typical of a private party

engaged in commerce" than the other. *Kato*, 360 F.3d at 111.

7

Because the commercial activities exception of FSIA is inapplicable, the Court holds that sovereign immunity bars this lawsuit.

## III.   CONCLUSION

For the reasons articulated above, Defendant's motion to dismiss is GRANTED.  This action is dismissed for lack of subject matter jurisdiction.  Defendant's earlier filed motion to dismiss, Dkt. No. 18, and letter motion for oral argument, Dkt. No. 40, are DENIED as moot. The Clerk of Court is respectfully directed to close this case.

This resolves Dkt. Nos. 18, 27, and 40.

SO ORDERED.

Dated:  April __30__, 2020
        New York, New York

_____
ALISON J. NATHAN
United States District Judge